IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHEILA CREGGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00037-P |
| | § | |
| ANDREW M. SAUL,[1] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sheila Youngblood Creggs ("Creggs") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1 at 1; Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 21. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

**I.   STATEMENT OF THE CASE**

Creggs was born on July 25, 1964. ECF No. 14 at 3. She has a high school equivalency diploma and additional technical school training. *Id.* She filed for DIB and SSI on August 31, 2015. *Id.* at 238, 245. She alleges that her disability began on July 9, 2015. *Id.* at 85. On the alleged disability onset date, she was an individual closely approaching advanced age. *Id.* at 35. The

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Commissioner initially denied her claims on December 28, 2015 and denied them again upon reconsideration on May 5, 2016. *Id.* at 21. Creggs requested a hearing, which was held before Administrative Law Judge ("ALJ") Kevin Batik on June 27, 2017 in Fort Worth, Texas. *Id.* at 21, 42. The ALJ issued an unfavorable decision on October 11, 2017, finding that based on the applications for DIB and SSI, Creggs was not disabled. *Id.* at 37.

The ALJ employed the statutory five-step analysis and established during step one that Creggs had not engaged in substantial gainful activity since July 9, 2015, the alleged disability onset date. *Id.* at 23. At step two, the ALJ determined that Creggs had the severe impairments of obesity, hypertension, neurocognitive disorder, and major depressive disorder. *Id.* At step three, the ALJ found that Creggs's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 28. He found that Creggs had moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and interacting with others. *Id.* at 29. The ALJ found that Creggs had mild limitations in adapting or managing herself. *Id.* At step four, the ALJ found that Creggs was unable to perform any past relevant work. *Id.* at 35. At step five, the ALJ found that jobs that Creggs could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. *Id.* at 35–36.

The Appeals Council denied review on November 15, 2018. *Id.* at 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2019). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after

considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.  ANALYSIS

Creggs argues that the ALJ's decision is not supported by substantial evidence because the hypothetical question that the ALJ asked the vocational expert ("VE") failed to adequately describe Creggs's mental limitations, and the ALJ failed to include those limitations in the RFC determination. For the following reasons, the undersigned finds that the ALJ did not err.

**A. The ALJ's hypothetical question to the vocational expert incorporated reasonably all of Creggs's disabilities that the ALJ recognized.**

This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-cv-00194-BG, 2012 WL 569188, at *4–5 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted,* No. 5:10-cv-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (internal citation omitted). Here, neither of the above requirements is true, so the hypothetical question is not defective.

Creggs argues that the ALJ's hypothetical question to the VE "failed to include the significant limitations disclosed by neurocognitive testing," so the question was defective and the VE's response was insufficient evidence to support the Commissioner's decision. ECF No. 16 at 3. She argues that the ALJ failed to tell the VE about her difficulties with attending to information delivered by others, organizing and coordinating, adjusting to constant changes in routine, and regulating emotions. ECF No. 14 at 9. Creggs further argues that the ALJ failed to tell the VE

5

about her potential difficulties with tardiness and with producing in situations in which speed and adaptability are required. *Id.* She contends that the ALJ failed to tell the VE that new material would need to be presented multiple times and in manageable amounts. *Id.*

The ALJ recognized some, but not all, of the above limitations. He recognized Creggs's difficulties attending to information delivered by others, producing in situations in which speed and adaptability are required, organizing and coordinating, and understanding new information that is not presented multiple times and in manageable amounts. *Id.* at 29, 33. The ALJ rejected the idea that Creggs has significant problems regulating her emotions and did not recognize the other limitations referenced in the previous paragraph. *Id.* at 29; *see id.* at 21–37.

The ALJ asked the VE the following hypothetical question, which quoted the limitations in the RFC:

> I would like for you to assume a hypothetical individual of the claimant's age and education, and with the past work that you described. Further assume the individual is limited to work at the light exertional level, is limited to understanding, remembering, and carrying out simple tasks and instructions, is precluded from interaction with the general public, limited to occasional interaction with coworkers and supervisors. Could that hypothetical individual perform any of the past work you've described? . . . Could that hypothetical individual perform any other work available in the national economy, and if so, can you give me some examples?

*Id.* at 60. The ALJ found that Creggs "has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she is limited to understanding, remembering, and carrying out simple tasks and instructions, is precluded from interaction with the general public, and limited to occasional interaction with co-workers and supervisors." *Id.* at 30.

The hypothetical question reasonably incorporated the mental limitations that the ALJ recognized. A limitation to understanding simple tasks and instructions incorporates Creggs's difficulties with attending to information delivered by others, producing in situations in which

speed and adaptability are required, organizing and coordinating, and understanding new information that is not presented multiple times and in manageable amounts. A limitation to occasional interaction with coworkers and supervisors also addresses Creggs's difficulties with attending to information delivered by others and understanding new information. Therefore, because the hypothetical question incorporated reasonably the mental limitations that the ALJ recognized, the undersigned cannot find that the ALJ erred on this point.

### B. The ALJ adequately considered Creggs's mental limitations in determining her RFC.

By definition, a claimant's RFC is the most she can still do despite her impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2019). The ALJ is not required to expressly state in the RFC the limitations on which the RFC is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 Fed. App'x 418, 422–23 (5th Cir. 2008) (per curiam)).

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical limitations, mental limitations, and other relevant limitations. 20 C.F.R. § 404.1545. In determining the claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c).

The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. *Id.* § 404.1545(d).

Creggs argues that the ALJ erred by failing to consider her specific neurocognitive limitations while determining her RFC and failing to include them in the RFC. ECF No. 14 at 2. Throughout his opinion, the ALJ extensively discussed the evidence regarding Creggs's neurocognitive limitations, which shows that he considered this evidence. *See* Tr. 24–27, 29–34. This evidence included examinations by James Jensen, Psy.D., and C. Alan Hopewell, Ph.D., which Creggs highlighted in her brief. ECF No. 14 at 8; Tr. 25–26, 422. The ALJ is not required to expressly list all of Creggs's limitations in the RFC. *Cornejo*, 2013 WL 2539710, at *9. Because the record shows that the ALJ properly considered Creggs's mental limitations while assessing her RFC, the undersigned cannot find that the ALJ erred on this point.

## IV. CONCLUSION

The ALJ reasonably incorporated Creggs's mental impairments into the RFC, adequately described them to the VE, and did not err in finding that Creggs was capable of performing other jobs that exist in significant numbers in the national economy. Likewise, the ALJ considered Creggs's neurocognitive limitations in reaching his decision. Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Creggs has failed to show that reversal of the ALJ's decision is required, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties

in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2020) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on **January 16, 2020**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE